IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EUGENE L. CLECKLER,        )
                       )
v                   )        Civ. Case No. 3:08cv397-WKW
                       )             (WO)
UNITED STATES OF AMERICA   )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This matter is before the court on the defendant's pro se motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255.  On January 12, 2007, Eugene L. Cleckler ("Cleckler") was convicted of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and 18 U.S.C § 2 and one count of aiding and abetting in the obstruction of the due administration of the Internal Revenue Code in violation of 26 U.S.C. § 7212 and 18 U.S.C. § 2.   On June 29, 2007, Clecker was sentenced on count one to 33 months' imprisonment and on count two to 24 months imprisonment.  The court ordered the sentences to be served concurrently.

On appeal, Cleckler raised the following issues:

(1)     The Government failed to disclose immunity agreements with witnesses Morris and Brown, thereby violating the court's standing discovery order and obligations under *Giglio v. United States*, 405 U.S. 150 (1972).

(2)     The court improperly compelled his tax attorney to testify concerning privileged information under the crime-fraud exception.

(3)     The court improperly admitted into evidence IRS reports and memoranda that contained inadmissible hearsay statements.

(4)     The court improperly applied an obstruction-of-justice enhancement to the advisory sentencing guidelines calculation.

(Doc. No. 7-5, Gov's Ex. 4.)  On February 19, 2008, the Eleventh Circuit Court of Appeals affirmed his convictions.  *United States v. Cleckler*, 265 Fed.Appx. 850 (11th Cir. 2008).

On May 29, 2008, Cleckler filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  In his motion and supporting memorandum, Cleckler raises the following claims:

(1)     Cleckler was denied his Sixth Amendment right to effective assistance of counsel at trial and on appeal, due to counsel's failure to properly argue a statute of limitations defense.

(a)     Counsel failed to argue that the last overt acts were attempts to conceal at best, and that no evidence was introduced showing an agreement to conceal.

(b)     Counsel failed to request a concealment instruction.

(2)     Cleckler was denied his Sixth Amendment right to effective assistance of counsel at trial and on appeal due to counsel's failure to argue that a constructive amendment of the indictment had occurred.

(3)     Cleckler was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to move for a severance.

(4)     Cleckler was denied his Sixth Amendment right to effective assistance of counsel due to counsel's failure to advise him of the risks involved in testifying and for failing to inform him that the decision to testify belonged to him.

(Doc. Nos. 1 & 2.)  The Government responded to the § 2255 motion, asserting that

Cleckler's claims are without merit. (Doc. No. 7.)  Cleckler was afforded an opportunity to respond to the Government's submission and has done so.  (Doc. No. 11.)  On March 23, 2009, this court conducted an evidentiary hearing concerning whether trial counsel was ineffective for failing to advise Cleckler of his right not to testify and to warn him that his sentence could be increased if the court found him to have committed perjury while testifying.  After due consideration, the court concludes that Cleckler's motion should be denied.

## II.  DISCUSSION

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687-89.  The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense. *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth

3

Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689. Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[P]etitioners must affirmatively prove

4

prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker....  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

## 1.  The Statute of Limitations and Concealment

Cleckler asserts that trial counsel failed to properly argue that the charges against him were barred by the statute of limitations.  Specifically, Cleckler contends that there is no evidence of any overt act in furtherance of the conspiracy which occurred within the

applicable limitations period.  He also argues that counsel should have argued that the latest

"overt acts" were nothing more than "attempts to conceal" and that there was no evidence

of any "agreement to conceal."   Cleckler also contends that trial counsel should have

requested an instruction on concealment.

First, the court notes that Kim's counsel submitted a motion for acquittal on the basis

of the statute of limitations and that Cleckler's counsel joined in that motion.  (R. 491-92.)

Then, at the close of the Government's case, the following exchange occurred:

> MR. BECK (Counsel for Kim Cleckler):   Our argument
> essentially is that the government has proven a material variance
> in that they proved two separate conspiracies, one that occurred
> allegedly in November of '96 involving accounts payable that
> involved different players and different participants than the
> alleged conspiracy that occurred with the alleged false invoices
> and handwritten proposals that occurred . . . between June and
> I believe November 2000 by separate participants. . . .
>
> Second, we allege that the first conspiracy has clearly
> expired and is not within the statute of limitations.  The second
> conspiracy, we think, is not within the statute of limitations
> because there's been no proof that an overt act was committed
> by any of the coconspirators.  It's not alleged nor proven that Ed
> Selfe was a coconspirator.  And I think Mr. Brown could not say
> when these documents were delivered.  We believe that the
> government's failed to prove beyond a reasonable doubt the
> existence of one conspiracy or that either of the alleged
> conspiracies occurred within the applicable period of the statute
> of limitations. . . .
>
> THE COURT:  Mr. Brunson (counsel for Eugene Cleckler), do
> you want to add to that?
>
> MR. BRUNSON: Yes, your Honor.  If I may adopt what Mr.
> Beck has just stated and continue regarding the statute of
> limitations.  Mr. Selfe is listed in the indictment as the person

acting in the last overt act. And certainly if Mr. Selfe was not a coconspirator, he cannot commit an overt act, although he's listed in the indictment.

The evidence is – mainly the government presented evidence related to when Mr. Selfe turned those records over to Mr. Brand versus when those records were completed by the coconspirators. And that would have been, of course, Brown and Morris. Potentially, that could have been after Brown – an overt act would have been where he delivered those to Mr. Selfe, and probably that would be the last overt act. The bottom line is I don't thing there's evidence beyond a reasonable doubt that occurred past the August 15th deadline. And again, we echo the issue of the two conspiracies versus one. . . .

THE COURT: Government's response?

MR. SCHIFF: Yes. On the statute of limitations, with respect to any acts committed by Mr. Selfe, under . . . 18 U.S.C. Section 2(b), an action that is willfully caused by a person is attributable to that person. And, therefore, if somebody causes someone else to do something in furtherance of a conspiracy, even an innocent person, then that will constitute an overt act in furtherance.

So . . . first of all, the applicable date is August 1, not August 15th because of the complaint and that statute that advised that in IRS cases, the statute of limitations runs from the filing of the complaint. We have Mr. Selfe delivering documents. His cover letter is dated August 7. There's testimony that upon receipt of those documents, Mr. Brand and Selfe have a conversation in which Brand says I need more backup. We have evidence that subsequent to that conversation, Mr. Selfe speaks with Eugene Cleckler and says we need more documentation. We have testimony that – from Cleveland Brown that he is asked by Eugene Cleckler that – or told that they need to come up with more documentation. And the more are those handwritten job quotations that Cleveland Brown testifies that he, Kim, and Eugene Cleckler all personally put pen to paper and created.

All that would have had to have happened – or certainly

it can be inferred by the jury – took place after that initial August 7 delivery of documents by Mr. Selfe.  And then Mr. Selfe testified, I believe, that all of the documents had been produced by the end of January '01, thus establishing a time frame for this conduct of between August 7, '00, and January 31st, 2001, all within the applicable statute of limitations.

In respect to two conspiracies versus one, I think there's ample evidence for the jury to find a single conspiracy. . . .

THE COURT: Okay.  I've considered all the arguments, and I'm going to deny the motion at this time.

(R. 493-96.)

In addition, at the close of the evidence, the following discussion occurred:

MR. BRUNSON: Just, your Honor, relating to the statute of limitations, the overt act.  I think although the language is fairly specific in the indictment regarding the overt act, I would not want the jury to think that Mr. Selfe is a coconspirator in this case.  And the last overt act talks about something he did.  And essentially, I would ask the Court to consider the second instruction that Eugene Cleckler recommended regarding some specific act occurring after August 15, 2000, in order for this case to be appropriately brought.

THE COURT: Well, the complaint was filed on August 1 of 2000.  I believe that's the appropriate date. . . .

THE COURT: All right.  Did I understand that the second set of documents that Mr. Selfe delivered was in November?  I have that in my notes.

MR. SCHIFF: My recollection from . . . IRS Agent Frank Brand was that the second set of documents – and he got this information from refreshing his own recollection with a series of notes – were delivered some time in November.  Based on his memory and Attorney Selfe's memory, the final set was delivered sometime between then and January 31st of '01.  I think Mr. Selfe is pretty clear that by that point, it had been

finished.  And his letter is, you know, asking Agent Brand to discuss the issues regarding the adjustments.

THE COURT: Yes.  I have marked statute of limitations in my notes there, that the issues were still on the table as of January 31, 2001.  That doesn't mean that was an overt act, but I do believe there's evidence of overt acts on . . .  August the 7th or 8th and in November.

The jury heard the evidence.  I'm inclined to leave my charge the way it is.  It does not refer to Mr. Selfe.  It says there is, however, a limit on how much time the government has to bring a conspiracy against a defendant.  For you to find the defendants guilty of conspiracy, the government must prove beyond a reasonable doubt that at least one overt act in furtherance of the conspiracy was committed after August 1st, 2000.

(R. 674-76.)

Despite the thoroughness of his trial counsel's objections and argument concerning whether any overt acts occurred during the applicable limitations period, Cleckler argues that counsel was ineffective because he failed to properly argue that the Government failed to prove any overt acts in furtherance of the conspiracy during the relevant time period.[1] Cleckler also asserts that trial counsel's argument was improper and that he should have argued that the actions occurring during the limitations period were merely "attempts to

---

[1]There is a six year statute of limitations for most criminal tax offenses.  26 U.S.C. § 6531.  Generally, the date of the original indictment tolls the statute of limitations.  *Id.* ;  *see also United States v. Belcher*, 41 F.3d 1516, 1994 WL 642195, *3 (10th Cir. 1994) (Table) (Where the original indictment fairly encompasses the charge and gives adequate notice to the defendant, the date of the original indictment tolls the statute of limitations for a superseding indictment.).  Thus, the relevant limitations period began running on August 1, 2000, and expired upon the filing of the complaint on August 1, 2006.  An accused conspirator's participation "is presumed to have continued until all objects of the conspiracy were accomplished or until the last overt act has been committed by any of the conspirators."  *United States v. Reed*, 980 F.2d 1568, 1583 (11th Cir. 1993).  Consequently, the statute does not begin to run until the final act in furtherance of the conspiracy by a co-conspirator has occurred.  *Reed*, 980 F.2d at 1584.

conceal" rather than overt acts furthering the conspiracy.

Regarding the overt act evidence, it is beyond doubt that the Government presented sufficient evidence from which a jury rationally could conclude that overt acts occurred within the statutory period.  During the trial, the evidence established that Cleckler and his son, Kim, co-owned a business called Gene's Marine.  (Criminal Transcript, R. 584.) Cleckler also owned another business called Ezy-Ryder. (R. 585.)  In June 1996, IRS Agent Frank Brand began an audit of the 1994 returns of both businesses.  (R. 65-66.)  In January 1999, Agent Brand issued a report indicating that the Clecklers owed a substantial amount of money in taxes.  (R. 111.)  Cleckler hired a tax attorney, Edward Selfe, to appeal Agent Brand's determination.  (R. 554, 589.)  In February 2000, an appellate officer determined that the case should be remanded to Agent Brand for consideration of any additional information that he had not previously considered.  (R. 118-19.)  At that point, Agent Brand's focus turned to whether certain revenue was attributable to Gene's Marine or to Ezy-Ryder.  (R. 120.)  After the appeal, the Clecklers alleged that the money in question came from sales by Ezy-Ryder to third parties.  (R. 119-120.)

Several former employees of Gene's Marine testified that they created false invoices indicating that Ezy-Ryder sold several boats and other fictitious documentation on letterhead purporting to be price quotes from Ezy-Ryder to its customers.  For example, Tanya Morris ("Morris"), an employee for Gene's Marine in Clanton, stated that, at some point in 2000, she, Cleckler, and Cleveland Brown ("Brown"), another employee, met and discussed the best way to create invoices "where it could not be traceable."  (R. 364.)  She stated that she

10

began creating fictitious invoices shortly after the meeting.  (R. 366, 376, 378, 409.)  Morris also testified that, on one occasion after Cleckler and the tax attorney held a private meeting, Cleckler stepped out of his office and instructed her that "Ed has told us that we need this and this and this, and you make it happen" and "you know what I mean."  (R. 425.)  Morris stated that, at the time she left her employment in October 2000, the creation of false documents "was still ongoing."  (R. 399, 412.)

Testimony indicates that Brown worked for Gene's Marine beginning on or around February 2000 until May 2001.  (R. 402, 445, 453, 518.)  Brown testified that, upon learning about the audit at the beginning of his employment, he was "told what to do by Gene" and that, at that time, he, Cleckler, and Kim began creating false invoices.  (R. 432-33, 450, 461.)  Evidentiary materials also indicate that, on occasion, Brown delivered the invoices to the tax attorney's office.  (R. 277, 438.)

The tax attorney, Edward Selfe ("Selfe"), testified that he gave the documents to Agent Brand.  (R. 275.)  On or around August 7, 2000, Selfe wrote a letter to Agent Brand indicating that he had enclosed copies of invoices reflecting sales in 1994 by Ezy-Ryder to Gene's Marine and noted that "similar data is being obtained for 1995."  (R. 128, 275-76.)  Selfe hand-delivered the letter and documentation to Agent Brand.  (R. 276.)  Upon receiving the documentation, Agent Brand requested "backup information" to support the Ezy-Ryder invoices.  (R. 129-30, 276.)  Selfe testified that he contacted Cleckler and asked him to investigate whether he had any other documentation to support the invoices and Cleckler indicated that he would do so.  (R. 276.)  At some point after this discussion, Brown

delivered more documents to Selfe's office.  (R. 277.)  Selfe testified that he sent a letter regarding the additional invoices, deposit slips, and quotation proposals to Agent Brand on January 31, 2001, and that he had provided these additional requested documents to the agent on or before that date.  (R. 278-79.)   Thus, the fabricated invoices for 1995 and the fabricated price quotes for both 1994 and 1995 were provided to Agent Brand at some point between his conversation with Selfe in August 2000 and the receipt of Selfe's letter on January 31, 2001.

Given that the evidence indicates that the creation of fictitious documents by co-conspirators was "ongoing" at least through October 2000 and that Selfe received the additional documentation from Brown and delivered the falsified documents to Agent Brand at some point between August 2000 and January 2001, this court concludes that there is sufficient evidence from which a reasonable jury could conclude that an overt act in furtherance of the conspiracy occurred within the applicable limitations period. Consequently, Cleckler has not demonstrated that trial counsel's failure to argue this contention more thoroughly when objecting on the basis of the statute of limitations fell below an objective standard of reasonableness and prejudiced his case.  *See Strickland*, *supra*.  Cleckler has not shown that a more strenuous or different argument would have affected the outcome of the trial.

Cleckler also contends that trial counsel was ineffective for failing to present a concealment defense or request an instruction on concealment.  In *Grunewald v. United States*, the Court discussed actions of concealment in cases involving conspiracy to defraud

12

the Government as follows:

> [A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. . . . [A]llowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely.  Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators.  For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world.  And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces.

353 U.S. 391, 401-02 (1957).  The Court explained that its holding does not "mean that acts of concealment can never have significance in furthering a criminal conspiracy."  *Id*., 353 U.S. at 404.  "A vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been obtained, for the purpose only of covering up after the crime."  *Id.*  Thus, acts of concealing for the purpose of covering up after the crime are not considered part of the original conspiracy because the concealment "indicate[s] nothing more than that the conspirators do not wish to be apprehended - a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord."  *Id*., 353 U.S. at 406.

Even if this court were to assume that trial counsel's performance was somehow deficient for failing to pursue a concealment defense or request an instruction on concealment, Cleckler cannot demonstrate that he suffered prejudice.  On direct appeal of Cleckler's convictions, the Eleventh Circuit determined that Cleckler "submitted these fabricated documents as part of his ongoing conduct to defraud the IRS.  Thus, Cleckler 'committed a crime or fraud subsequent to receiving the benefit of counsel's advice.'" *United States v. Cleckler*, 265 Fed.Appx. 850 (11th Cir. 2008) .  Moreover, at trial, the Government presented sufficient evidence from which a jury could conclude that the creation of fictitious documentation indicating additional sales of trailers and boat repairs for 1994 and 1995, would have effectively reduced Cleckler's tax liability, and the delivery of this false documentation to a tax attorney and IRS agent in 2000 or 2001 were overt acts in furtherance of the "main criminal objectives of the conspiracy" to defraud the IRS.  *See Grunewald*, *supra*.  Given the overwhelming evidence of Cleckler and the other conspirators' ongoing conduct to defraud the IRS during the relevant time period, Cleckler has failed to demonstrate that counsel's failure to argue a concealment defense when objecting on the basis of the statute of limitations or request an instruction on concealment would have resulted in a different outcome.  *See Strickland*, *supra*.

## 2. The Indictment

Cleckler contends that trial counsel was ineffective for failing to object to the court's constructive amendment of the indictment.  Specifically, Cleckler argues that, because both he *and* Kim were charged with conspiracy in the indictment, the court's instructions that a

14

separate crime or offense was charged against one *or* more of the defendants in each count of the indictment and that the case of each defendant should be considered *separately and individually* constructively amended the indictment.

To prevail on a constructive amendment claim, a defendant must demonstrate that "the essential elements of the offense contained in the indictment were altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Castro*, 89 F.3d 1443, 1452-53 (11th Cir. 1996).  *See also*, *e.g.*, *United States v. Sears*, No. 08-10040, 2008 WL 5237164, *3 (11th Cir. Dec. 17, 2008); *United States v. Lavigne*, 282 Fed. Appx. 790, 793 (11th Cir. 2008). "'A constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the indictment.'" *United States v. Williams*, 246 Fed. Appx. 626 , 631 (11th Cir. 2007);  *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002).  In determining whether an indictment was constructively amended, the court considers whether the instructions "viewed in context" literally or effectively expanded the indictment.  *Sears*, 2008 WL at *3 (quoting *United States v. Behety*, 32 F.3d 503, 508-09 (11th Cir. 1994)).

In the indictment, both Cleckler and Kim were charged with "conspiring among themselves and with TM and CB to defraud the United States" in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2 and "aiding and abetting each other and by TM and by CB, did corruptly obstruct and impede the due administration of the internal revenue laws. . . ." in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2.  During the trial, the court instructed as

follows:

> A separate crime or offense is charged against one or more of the defendants in each count of the indictment. Each charge and the evidence pertaining to it should be considered separately. Also, the case of each defendant should be considered separately and individually. The fact that you many find any one or more of the defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other defendant.
>
> I caution you, members of the jury, that you are here to determine from the evidence in this case whether each defendant is guilty or not guilty. Each defendant is on trial only for the specific offenses alleged in the indictment.

(Gov's Ex. 5, Criminal Trial Transcript, R. 734-35.)

The criminal liability of each defendant should be considered separately and individually. *See United States v. Kinnard*, 472 F.3d 851, 859 (11th Cir. 2006) (holding that the court's cautionary instructions to consider "the case of each defendant separately and individually" mitigated the potential "spillover effect" of evidence of the co-defendant's guilt); *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (holding that the court avoided any potential prejudice by instructing the jury that each defendant should be considered separately and individually); *United States v. Issa*, 265 Fed. Appx. 801, 811 (11th Cir. 2008) (holding that trial court did not err in denying a motion to sever, especially in light of the court's instruction that the case of each defendant should be considered separately and individually). Thus, the trial court's cautionary instruction to the jury to consider each of the defendants' cases separately and individually was a correct statement of the law. This court therefore concludes that the trial court did not constructively amend the indictment by

advising the jury of the manner in which to follow the law.   Consequently, Cleckler has failed to demonstrate that trial counsel's failure to object to a constructive amendment of the indictment fell below an objective standard of reasonableness and prejudiced his case.   *See Strickland*, *supra*.

### 3.  The Motion to Sever

Cleckler asserts that trial counsel was ineffective for failing to submit a motion to sever.  Specifically, he argues that a severance would have been granted because his and his son's defenses were "unavoidably antagonistic." (Doc. No. 2, Cleckler's Memorandum, p. 18.)  "The assertion of mutually antagonistic defenses may satisfy the test for compelling prejudice." *United States v. Perez-Garcia*, 904 F.2d 1534, 1547 (11th Cir.1990).  However, such defenses do not justify severance unless " 'the essence of one defendant's defense' [is] 'contradicted by a co-defendant's defense'. . . . " *United States v. Berkowitz*, 662 F.2d 1127, 1132-34 (5th Cir. Unit B 1981).[2]  To warrant severance, defenses must be "antagonistic to the point of being 'mutually exclusive.'" *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005) (quoting *United States v. Knowles*, 66 F.3d 1146, 1159 (11th Cir. 1995)).  *See also Perez-Garcia*, 904 F.2d at 1547 (*quoting United States v. Magdaniel-Mora*, 746 F.2d 715, 718 (11th Cir.1984)).

Cleckler alleges that, prior to trial, he told trial counsel that Kim would blame him for any criminal conduct that had occurred.  (Doc. No. 11-2, Clecker's Affid.)  In addition,

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Cleckler argues that Kim's defensive strategy was to shift any guilt away from himself and onto his father. Cleckler contends that Kim's testimony that the documents submitted to the IRS were false and were created in the store where his father worked is evidence that Kim's defense was that only he (Cleckler) could be guilty of the charged offenses. (Doc. No. 3, Clecker's Memorandum, p. 18.) Trial counsel, however, maintains that both Cleckler and Kim participated in a joint defense and that Kim did not place or shift blame onto Cleckler. (Doc. No. 6-2, Brunson's Affid.) Kim did not testify that Cleckler created false documents or that he created the documentation at the Clanton headquarters. The transcript of the trial does indicate that, during opening and closing arguments, Kim's defense counsel stated that Cleckler managed the Clanton store where the relevant business records were maintained and that Kim managed the Montgomery store. Kim's testimony was consistent with this statement of facts. Several other witnesses also testified that Kim worked in sales at the Montgomery store and that Cleckler was involved in business activities in the Clanton store where the business records were maintained. (Gov's Ex. 5, R. 308-09, 335-36, 34, 347-48, 364, 371.) The statements by defense counsel and the witness' testimony indicating that Cleckler was a businessman who worked in the office where business records were maintained do not demonstrate, however, that the essence of Cleckler's defense was contradicted by Kim's defense. *See Berkowitz, supra.*

This court has reviewed the record and concludes that Cleckler's mere assertion of conflicting defenses fails to make the requisite showing that his defense and the defense of his co-defendant were so antagonistic as to be irreconcilable or mutually exclusive.

18

Consequently, Cleckler has failed to demonstrate that counsel's failure to submit a motion to sever fell below and objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

### 4.    Issues Presented at the Evidentiary Hearing

Cleckler next claims that trial counsel was ineffective for failing to advise him of his right not to testify and that the decision whether to testify or not testify was his alone to make. He also asserts that trial counsel provided ineffective assistance by failing to properly advise him about the possible adverse consequences of testifying at trial. Specifically, Cleckler contends that trial counsel was ineffective for failing to advise him that the government could seek an enhancement for obstruction of justice if he were found to committed perjury while testifying.

### (a)    The Right to Testify

Cleckler contends that trial counsel failed to inform him of his right not to testify. During the hearing, Clecker testified that he is not learned in the law and relied on Brunson's advice, and that Brunson never told him that the decision whether or not to testify was his alone. In addition, Cleckler testified that he was under the impression that he was required to testify because, at the close of the State's case, Brunson turned to him and said, "You got to take the stand next to defend yourself."[3]

At the hearing, Brunson testified that he was under the impression that Cleckler

---

[3]Prior to trial Brunson arranged a mock trial session to demonstrate to Cleckler "how bad" testifying at trial could be.

understood the elementary concept that a defendant has a constitutional right not to testify at trial.  Brunson stated that, when advising Cleckler, he would frequently use phrases such as "*if* you take the stand" or "*if* our case is not in good enough shape." Brunson, however, conceded that he did not recall telling Clecker at any time that he had the right not to testify. Brunson testified that he encouraged Cleckler to testify because he appeared to be a good witness, his story was consistent, he was not timid, and he seemed intelligent.  He further indicated that, after conferring with Cleckler, the co-defendant, and co-counsel, the defense made a strategic decision for Cleckler to testify because several witnesses had implicated both defendants during the Government's case and testimony denying the defendants' involvement in the conspiracy was therefore necessary.

A claim of ineffective assistance of counsel is the proper framework to analyze defendant's allegation that his attorney has violated his right to testify.  *See United States v. Teague,* 953 F.2d 1525, 1534 (11th Cir. 1992) (*en banc*).  A criminal defendant has a "fundamental constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *Teague,* 953 F.2d at 1532.

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.  This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a known right or privilege."  Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the

20

> strongest possible terms not to testify.  The defendant can then
> make the choice of whether to take the stand with the advice of
> competent counsel.

953 F.2d at 1533 (footnotes omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

> Where counsel has refused to accept the defendant's decision to
> testify and refused to call him to the stand, or where defense
> counsel never informed the defendant of his right to testify and
> that the final decision belongs to the defendant alone, defense
> counsel "has not acted 'within the range of competence
> demanded of attorney's in criminal cases,' and the defendant
> clearly has not received reasonably effective assistance of
> counsel." *Teague,* 953 F.2d at 1534 (citing *Strickland,* 466 U.S.
> at 687, 104 S.Ct. 2052).

*Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999).

Defense counsel's concession that he does not recall informing Cleckler of his right

to testify or not testify or that the final decision belonged to him alone demonstrates that

counsel's performance was deficient under the first prong of the *Strickland* standard.

Although an attorney's failure in this regard is grounds for a claim of ineffective assistance

of counsel, Cleckler must also satisfy the second prong of the *Strickland* analysis by showing

that he was prejudiced as a result.  *See Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir.

1992).  Thus,

> [Cleckler] must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability
> is a probability sufficient to undermine the confidence in the
> outcome.

*Strickland*, 466 U.S. at 694.

In this case, Cleckler has not demonstrated a reasonable probability that the jury

would have rejected the substantial evidence against him and acquitted him based upon the

absence of his testimony.

> The testimony of a criminal defendant at his own trial is unique
> and inherently significant.  "The most persuasive counsel may
> not be able to speak for a defendant as the defendant himself
> might, with halting eloquence, speak for himself."  *Green v.*
> *United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d
> 670 (1961).  When the defendant testifies, the jury is given an
> opportunity to observe his demeanor and to judge his credibility
> firsthand.  As the United States Supreme Court noted in *Rock v.*
> *Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d
> 937, "the most important witness for the defense in many
> criminal cases is the defendant himself."  Further, in a case such
> as this where the question was not whether a crime was
> committed, but whether *the defendant* was the person who
> committed the crime, his testimony takes on even greater
> importance.  Indeed, "[w]here the very point of trial is to
> determine whether an individual was involved in criminal
> activity, the testimony of the individual himself must be
> considered of prime importance."  *United States v. Walker*, 772
> F.2d 1172, 1179 (5ᵗʰ Cir. 1985).

*Nichols*, 953 F.2d at 1553-54.

This was not a close case.  As previously determined by the Eleventh Circuit on direct

appeal, the Government presented "overwhelming evidence" of Cleckler's guilt.  (Doc. No.

7-5, Gov's Ex. 4, p. 9.)  Specifically, the Court determined that "[t]hrough the testimony of

Selfe, Morris, and Brown, and some of the fabricated documents in issue, the government

clearly established that Cleckler directed the fabrication of documents reflecting fictitious

third-party sales and that he submitted these documents to the IRS."  (*Id.*)   Moreover,

because the question in Cleckler's case was not whether a crime was committed, but whether

Cleckler was the person who committed the crime, his testimony was of great importance.

22

*See Nichols*, 953 F.2d at 1554.  During the criminal trial, Cleckler denied instructing anyone to create false invoices.  (R. 562.)  He testified that Brown went to the IRS after he was accused of stealing money and inventory from the business and was subsequently fired and that Tanya Morris went to the IRS shortly after he refused to give her a raise and told her not to return.  (R 562-63, 574-75, 596.)  Cleckler also stated that, during a meeting with Selfe, Brown indicated that he would assist in obtaining backup information by reconstructing original invoices and that an accountant in Montgomery would assist him.  (R. 555.)  In addition, Cleckler testified that he was a high school graduate, that he started the boating business on his own, that he was unschooled in accounting methods, and that he placed all of his trust in his accountants. (R. 534-37, 543-44.)  The jury also heard testimony from Cleckler about the many personal hardships he had suffered during the IRS investigation. (R. 575-77, 583, 588.)  Given the overwhelming evidence of guilt and in light of Cleckler's own favorable testimony, the court concludes that Cleckler has failed to establish a reasonable probability that, but for counsel's failure to advise him of his right not to testify and that the decision rested solely with him, the result of the proceeding would have been different.  *See Strickland*, *supra*.  *See also Cauley v. United States*, No. 06-21426-CIV, 2008 WL 4716961, at *11 (S.D. Fla. Oct. 23, 2008) (quoting *Sexton v. French*, 163 F.3d 874, 883 (4th Cir. 1998) (finding no prejudice because "his testimony at trial only helped his case")).

### (b)    The Obstruction of Justice Enhancement

During the evidentiary hearing, Cleckler testified that his attorney failed to advise him that if his testimony were found to be false, his sentence could be enhanced for obstruction

of justice.  Brunson, however, testified that he sent a letter to Cleckler in which he informed him that the Government had offered a plea agreement and cautioned him that "[a] trial conviction would result in a custody sentence of about 36 months and if the judge found that you lied during your testimony at trial (which is a common finding when the jury convicts contrary to the defendant's testimony), up to 46 months custody."  (Doc. No. 6-2, Attach. to Brunson's Resp.)   Cleckler testified that he never received the letter, and Brunson acknowledged that he did not maintain an adequate correspondence file in this case and that the letter in evidence is an unsigned computer-generated copy.  Because Cleckler's claim that his counsel had a duty to advise him of the risks of testifying falsely fails on the merits, it is unnecessary for the court to grapple with whose testimony is credible.

The issue presented is whether a defense attorney may render constitutionally ineffective counsel by failing to advise his client that if he testifies at trial and is found guilty the court at sentencing may find that he testified untruthfully and enhance his sentence.  A criminal defense attorney has a duty to prevent perjured testimony when possible by a criminal defendant.  *Nix v. Whiteside*, 475 U.S. 157 (1986).  Defense counsel, however, is not required to warn a defendant that testifying untruthfully could lead to a sentence enhancement for obstruction of justice, especially when the defendant has taken the oath. *See Mayes v. United States*, No. 7:07cv00132, 2007 WL 4302829, at *9 (W.D. Va. Dec. 6, 2007) (unpublished); *United States v. Williams*, No. A01-126 CR JKS/JDR, 2005 WL 3303934, at *5 (D. Alaska Dec. 5, 2005) (unpublished).  "[T]aking the oath prefatory to testifying informs a witness that truthful testimony is expected.  That the untruthful witness may not

24

be aware of the exact penalty to be suffered does not mean that he is unaware of the prohibition against false testimony." *Robertson v. United States*, 144 F. Supp. 2d 58, 67 (D. Rhode Island 2001). In this case, Cleckler was administered the oath requiring him to tell the truth, and he accepted that oath. (R. 533.) This court therefore concludes that Cleckler has failed to demonstrate that counsel's failure to advise him that he could suffer a penalty for testifying falsely fell below an objective standard of reasonableness.

Cleckler has also failed to establish prejudice under the second prong of *Strickland* as the result of counsel's failure to advise him that he could receive a two-point enhancement for obstruction of justice. At sentencing, Cleckler received a total offense level of 20. The 2000 Federal Sentencing Guidelines provide that the sentencing range for a total offense level of 20 with a criminal history category of I is a term of imprisonment between 33 and 41 months' imprisonment. Without the two-level enhancement for obstruction of justice, the sentencing range for a total offense level of 18 with a criminal history category of I is a term of imprisonment between 27 and 33 months' imprisonment. Cleckler was sentenced to 33 months' imprisonment for conspiracy to defraud the United States (Count One) and 24 months' imprisonment for corrupt or forcible interference and aiding and abetting (Count Two), with the sentences to be served concurrently.[4] Thus, the 33-month sentence Cleckler received is within the range prescribed for his offense without the two-level enhancement for obstruction of justice. Consequently, Cleckler has failed to demonstrate a reasonable probability that, but for counsel's failure to advise him of the possibility that he could receive

---

[4] Counts One and Two are grouped together pursuant to U.S.S.G. § 3D1.2.

25

an enhancement for obstruction of justice if he were found to have testified falsely, the result of the proceeding would have been different. *See Strickland*, *supra.*

### 5. Ineffective Assistance of Appellate Counsel

Cleckler asserts that appellate counsel was ineffective for failing to raise on appeal all of his ineffective assistance claims as substantive claims. The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *See Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance").

As previously discussed, Cleckler's claims of ineffective assistance of trial counsel and the substantive claims subsumed within the ineffectiveness claims are without merit. Thus, Cleckler has failed to show that appellate counsel's performance was deficient and that he suffered prejudice as a result of the omission of these claims on direct appeal. *See Strickland, supra.*

Based on the foregoing, the court concludes that Cleckler's § 2255 motion with respect to his claims of ineffective assistance of trial and appellate counsel are due to be denied.

26

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion be denied as the claims presented therein entitle the defendant to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before April 16, 2009.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

Done this 3rd day of April, 2009.


_____ /s/Charles S. Coody _____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

27